**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.** **No. 26CR2448 MIS**

**STEPHEN CRAIG CAMPBELL,**

**Defendant.**

**DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

COMES NOW Defendant, Stephen Craig Campbell, by and through his attorney, David Benatar, and hereby submits the following objections to the Presentence Report filed on July 27, 2026 (Doc. 45).

**OBJECTIONS TO THE PRE-SENTENCE REPORT**

A pre-sentence report ("PSR") was disclosed in this case on July 27, 2026. Mr. Campbell respectfully objects to any paragraph that claims that there is restitution owing in this case. Mr. Campbell further objects to the calculation in paragraph 43, in that Mr. Campbell possessed all ammunition and firearms for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise use such firearms and ammunition. Finally, Mr. Campbell objects to paragraph 57, which describes a pending case out of Wyoming; Mr. Campbell denies the allegations and retains the presumption of innocence in this matter.

**I. Mr. Campbell objects to any paragraph in the PSR that claims that restitution is owing.**

First, with regard to any claim to restitution, Mr. Campbell contends that no restitution is owing in this case. As noted in paragraph 18, there were no work earnings under the "Coffman" name from 1970 to 1982; work earnings under that name began in 1983 and continued on and off until 2023. Walter Coffman passed away in 1975. Any work earnings under the "Coffman" name were done by Stephen Campbell and not the deceased Walker Coffman.

Restitution requires either a direct or proximate loss by the victim, neither of which is present here. Any money in dispute is money that Stephen Campbell earned and his own work credits; neither the deceased Walter Coffman, nor anyone else, paid in under the "Coffman" name nor suffered any loss.

Furthermore, under *Hughey v. United States*, 495 U.S. 411 (1990), restitution must be strictly limited to losses caused by "the specific conduct that is the basis of the offense of conviction." The Tenth Circuit repeatedly enforces this rule. *See United States v. Gordon*, 480 F.3d 1205 (10th Cir. 2007) ("restitution is authorized only for losses directly and proximately caused by the conduct underlying the offense of conviction"); *United States v. Wells*, 873 F.3d 1241 (10th Cir. 2017).

Mr. Campbell pled guilty to four offenses, none of which criminalize theft of SSA benefits, false benefit applications, or any Title II conduct. The plea agreement does not expand restitution authority beyond the offense of conviction.

The MVRA requires that restitution be paid only to persons "directly and proximately harmed by the commission of the offense of conviction." 18 U.S.C. §3663A(a)(2). In this case, count 1 harmed the New Mexico MVD, not the SSA. Count 2 involved possession of a false card on February 19, 2025, not the 2015 benefit application. Count 3 is tied to count 2, while count 4 is a firearms offense wholly unrelated to SSA. The SSA was not "directly and proximately harmed" by any offense of conviction. It was harmed, if at all, by uncharged conduct occurring decades earlier. The statute does not permit restitution for that.

**II. Mr. Campbell objects to the offense level calculation in paragraph 43; Mr. Campbell possessed all ammunition and firearms for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms and ammunition. He should receive a reduction under §2K2.1(b)(2).**

Mr. Campbell possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms and ammunition. Therefore, his offense level should be adjusted to offense level 6 for the calculation in count 4.

There is no record anywhere that Mr. Campbell used these firearms for any crime, or for unlawful purpose. Mr. Campbell and his ex-wife were gifted these firearms as part of a collection. Attached is a letter documenting this gift. The firearms were from then on used for sport and competition. Mr. Campbell and his ex-wife were members of the Single Action Shooting Society (SASS), which is an international organization created to promote family-friendly, safety, and historical preservation. At SASS, Mr. Campbell and his wife participated in matches which consisted of timed stages, shooting live ammunition at steel targets. Participants also competed with dress authentic 19th century Old West clothing, adding a theatrical and historical element to the competition. Mr. Campbell and his wife were also long time members of the Otero Practical Shooting Association (OPSA) in Alamogordo, between 2005 and 2017. OPSA was founded in 1995 and hosted Cowboy Action shooting matches, which Mr. Campbell and his wife would participate in. Attached are various certificates, awards, pictures, and an affidavit from Mr. Campbell's ex-wife to this effect.

Nothing in the record indicates that the firearms and ammunition were used for unlawful purposes; in fact, quite the opposite seems to be the case. The firearms and ammunition were used for sport and recreation.

The Government may point to a single alleged use on the date of Mr. Campbell's arrest, noting that the surrounding circumstances demonstrate that at least one firearm was possessed for a purpose

unrelated to hunting or sporting activity, namely, personal protection. The Government contends that the firearm was maintained as a means of self-defense, demonstrating that Mr. Campbell's possession was not limited to the sporting or collection purposes required by §2K2.1(b)(2). However, even if the Government can show a one time use for personal protection, that does not negate Mr. Campbell's ability to benefit from the reduction contemplated by 2K2.1(b)(2), nor does it negate the fact that the firearms were possessed for lawful sporting purposes or collection and not intended for any other use.

The 10th Circuit has ruled that limited non-recreation, non-sporting use does not disqualify a defendant from rightfully obtaining the 2K2.1(b)(2) reduction. In *United States v. Collins*, 313 F.3d 1251 (10th Cir. 2002), the Tenth Circuit found that the fact that a defendant twice used his gun as collateral did not preclude the application of the section of unlawful possession of a firearm guideline providing for a reduction in the base offense level for defendants who possessed all ammunition solely for lawful sporting or collection purposes or collection, and who did not unlawfully discharge or otherwise use such firearm or ammunition. In other words, limited use for purposes other than sport, recreation, or collection does not disqualify a defendant from receiving the reduction. Even if Mr. Campbell had limited, one time use for self defense and protection, that would not disqualify him from receiving the downward variance. As noted in *Collins at 1255*, "[W]e have noted that this provision is 'clearly intended to punish innocent possession and use of a firearm less severely, and improper use more severely.'" *See also United States v. Mojica*, 214 F.3d 1169, 1171 (10th Cir. 2000) (quoting *United States v. Jones*, 158 F.3d 492, 501 (10th Cir. 1998)). *"Mojica* stands for the proposition that §2K2.1(b)(2) should read broadly to encompass circumstances that are consistent with the provision's intent to provide a lesser punishment for possession of a firearm that is more benign." *Collins at 1255.* Mr. Campbell's well documented use of firearms for recreation, sport, and collection, falls under what was contemplated by 2K2.1(b)(2), and cannot be negated by alleged one time use for personal protection or self-defense. Mr. Campbell's use of firearms falls squarely under the "innocent possession" contemplated by 2K2.1(b)(2) and *Collins*, and not "improper use."

**III. Mr. Campbell objects to any inference of guilt from what is described in paragraph 57 of the PSR, and objects to the facts contained within**.

Mr. Campbell objects to the alleged facts described in paragraph 57 of the PSR, which describes a pending case out of Wyoming. This charge is pending. Mr. Campbell denies the allegations, and retains the presumption of innocence in this matter.

Mr. Campbell asserts his right to remain silent in this pending Wyoming matter, pursuant to *Mitchell v. United States*, 526 U.S. 314 (1999). Per *Mitchell*, Mr. Campbell respectfully requests that the Court not question him regarding the pending matter in Wyoming, nor hold his silence against him.

Respectfully submitted,

*By:/s/ DAVID BENATAR*
Assistant Federal Public Defender
Las Cruces Office
**FEDERAL PUBLIC DEFENDER**
506 S. Main Street, Ste 400
Las Cruces, NM 88001
(575) 527-6930